UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

RICKY STONECYPHER )
 )
V. ) NO. 2:09-CV-123
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

Plaintiff has filed this action for judicial review of the defendant Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income under the Social Security Act. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 13] and the defendant has filed a Motion for Summary Judgment [Doc. 16]. These have been referred to the United States Magistrate Judge under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation.

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the

reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services*, 846 F.2d 345, 349 (6th Cir. 1988).

Plaintiff was 54 years old at the time of his hearing before an Administrative Law Judge. His past relevant work experience was as a sweeper/janitor which is classified as light work. He has a high school education with two years of college. Plaintiff alleged a disability onset date of September 20, 2006. Plaintiff alleges a number of severe impairments, including degenerative disc disease, obesity, a heart condition with chest pain (including a past alleged myocardial infarction), diabetes, seizures, migraines, vision problems, and a mental impairment.

The medical record is fairly scant, which plaintiff asserts is due to his lack of health insurance. Defendant was apparently injured at work when caught between two bales of recycled paper of extreme weight [Tr. 22]. The exact date of the injury seems to be of some confusion. His counsel states that the injury occurred on February 21, 2006 [Doc. 13-1, pg. 7]. However, records from Greeneville Urgent Care [Doc. 168] state that plaintiff was injured on "06/21/05." [Tr. 166]. He was placed on Lortab and physical therapy. The injury was described as "soft tissue contusion of the anterior and posterior chest wall..."

The next record from Greeneville Urgent Care, dated September 26, 2005, says the plaintiff "returns for follow up regarding a contusion to his back." [Tr. 167]. The physician on this visit, Dr. Leon Cochran, stated the plaintiff had diffuse tenderness over all regions of his spine. Most of the records of Greeneville Urgent Care are undated, but plaintiff was continually placed upon standing and lifting restrictions. [Tr. 166-98] The last treatment note from that

provider (undated) said "because of lack of improvement for over six months and multiple physical therapies an orthopedic referral has been advised to see if there is any evidence of significant disease." [Tr. 194].

On February 21, 2006, he was seen by Dr. Glenn Trent of Appalachian Orthopaedic Associates. Dr. Trent recounted the history of plaintiff's work injury and his complaints of pain. He noted that plaintiff was on seizure medication, having had a seizure in 1992. He also stated the plaintiff had diabetes. Plaintiff had x-rays with him on this visit which Dr. Trent stated showed "mild disc degeneration at the thoracic region with some small anterior spurs. The lumbar spine, the disc spaces are well maintained. The spine is well maintained. The spine is well aligned. no evidence of fractures, lytic blastic areas. No instabilities on either film." The overal impression was mild disc degeneration of the thoracic spine with an essentially normal lumbar spine. Dr. Trent elected to get an MRI. [Tr. 244].

At the next visit on April 21, 2006, Dr. Trent said the MRI showed "rather significant degenerative changes." There was "an area with a spur that does not appear to be impinging the cord to any great extent." There was no root impingement. Dr. Trent elected to treat plaintiff with therapy, noting plaintiff was "working light duty." [Tr. 343]. Subsequent visits on May 22, 2006, June 12, 2006, and July 7, 2006 indicated that the therapy was helping. Plaintiff was still working light duty during that time. Dr. Trent said "I think if he sticks with his job and finishes out his P.T., I think that should be helpful to him." Plaintiff continued to be given Lortab. [Tr. 243].

The final visit to Dr. Trent was on August 21, 2006. Dr. Trent stated that "the FCE

3

shows him to be at a medium job level. I have put a 40 lb. weight limit on him. Will keep bend, twist, squat and stoop to a minimum. May return to work today. Stay on across the counter medicines." Dr. Trent also states "[t]he degenerative changes that he has were certainly pre-existing." He gave him a total body impairment from the accident of 6%. [Tr. 242].

Apparently during and after the time he was being treated by Dr. Trent, plaintiff was under the care of Dr. Richard J. Aasheim of Takoma Medical Associates, presumably as his family doctor. [Tr. 257-70]. The first visit with Dr. Aasheim after Dr. Trent's final note and evaluation occurred on September 19, 2006. The plaintiff was apparently still working, where he had "to do bending; but, not too much lifting." Plaintiff "had to ride on a tow motor and a Bobcat." Plaintiff "struggled" with weight gain, weighting 224 on that visit. His seizures were under control on medication. He was noted as having degenerative disc disease. Dr. Aasheim stated "he may continue normal activity. We will recommend exercise and weight reduction." [Tr. 261].

At the next visit on November 21, 2006, Dr. Aasheim stated that plaintiff "has been off his regular job for the past two months while he is being evaluated and his medical reports are being evaluated for his fitness to work on the job."[1] Plaintiff was "working around the house currently." He still had some back pain. Dr. Aasheim encouraged exercise and weight reduction. [Tr. 260]. The next note, dated January 22, 2007, states that the plaintiff "seems to be doing about the same." Dr. Aasheim noted that the plaintiff had not worked since September of the previous year due to "his degenerative disc disease." In addition to previous diagnoses,

---

[1] What these medical reports which were "being evaluated" were is uncertain. There are no other records from this time period in the record other than Dr. Trent's and Dr. Aasheim's.

Dr. Aasheim noted "chronic anxiety." [Tr. 259].

The next visit to Dr. Aasheim took place on March 26, 2007. He states that plaintiff's lower back pain, "is flared up a bit because of his recent outdoor activities." Dr. Aasheim states that plaintiff had a heart attack "five years ago," and that "his last seizure was last Fall." He was given Talwin for pain, Klonopin and Dilantin. He noted a diagnosis of "chronic anxiety/depression." [Tr. 258]. At the next visit on April 30, 2007, Dr. Aasheim stated that plaintiff "still has his back pain limitations." He noted plaintiff was walking and "trying to be as active as possible. [Tr. 257].

The record documents further visits to Dr. Aasheim on April 30, 2007, June 12, 2007, August 14, 2007, September 25, 2007, November 6, 2007, December 18, 2007, and February 19, 2008. [Tr. 293-99]. These records were apparently just routine visits to see if he was having problems with his medications and to monitor his blood sugar. It was noted that he continued to have chronic back pain, worse at times than others, and that he was doing some walking and yard work for his mother.

State Agency physician Frank R. Pennington evaluated the plaintiff's then existing records on March 10, 2007. He found that plaintiff's "allegation of pain is partially credible..." [Tr. 256], but that there was nothing apparent "which could reasonably cause the degree of restrictions and the pain alleged." [Tr. 254]. He opined that the plaintiff could frequently lift 25 pounds, occasionally lift 50 pounds, stand and walk for 6 hours each in an 8-hour workday, and had no other physical limitations other than avoiding concentrated exposure to extreme cold or heat. [Tr. 249-56]. Another State Agency physician, Dr. Lloyd A. Walwyn, found an

identical functional capacity on October 11, 2007. [Tr. 271-78].

On May 23, 2008, plaintiff was examined at his counsel's request by Robert S. Spangler, Ed.D., a psychologist in Johnson City, Tennessee. He asked the plaintiff about his medical history. He noted that the plaintiff had been diagnosed with anxiety and depression, but had not had any mental health treatment. He stated that plaintiff related he was being treated by Dr. Aasheim "for primary care, anxiety and depression." [Tr. 300-01]. Plaintiff advised Dr. Spangler that his previous work had been as a heavy equipment operator. He said he tried to return to work as a sweeper for 5 weeks but "couldn't shovel the heavy stuff." The mental status evaluation was largely uneventful. However, Dr. Spangler noted the plaintiff "demonstrated tremors and was tense." Also, "[h]is mood was anxious and depressed." Dr. Spangler stated that plaintiff's stream of thought was concrete, his associations were logical, and he was emotionally stable, although "his medical conditions exacerbate his anxiety levels." [Tr. 302].

Dr. Spanler administered various tests. The IQ test was invalid because of plaintiff's hand tremors. Plaintiff's "pace was inadequate as objectively measured." Dr. Spangler diagnosed Generalized Anxiety Disorder, moderate, untreated; and depressive disorder which was mild and untreated. He opined plaintiff had a slow pace, limited education reading skills and comprehension, mild erratic concentration during the second hour of his visit, and a GAF of 55. The prognosis was "[f]air in terms of GAD/depression with regular mental health treatment." However, he opined also that plaintiff's "health exacerbates his anxiety." [Tr. 303-04].

6

Dr. Spangler completed a mental assessment form. He opined that plaintiff had a "good" ability to follow work rules; to use judgment with the public; and to maintain personal appearance. He had a "good to fair" ability to relate to co-workers, deal with the public, function independently, and carry out simple job instructions. He had a "fair" ability to deal with work stresses, carry out detailed job instructions, behave in an emotionally stable manner, relate predictably in social situations, and to demonstrate reliability. He had a "poor/none" ability to carry out complex job instructions. He stated that "[m]oderate anxiety affects all work-related activities. Slow pace impacts the ability to carry out instructions. A significant drop in PIQ may have occurred. He may equal or meet [Listing] 12.02." [Tr. 307-09].

On October 16, 2007, Dr. William M. Regan, a State Agency psychiatrist, completed a psychiatric review technique form [Tr 279-92]. Presumably, Dr. Regan reviewed the plaintiff's medical records, but did not examine plaintiff. His evaluation occurred several months before Dr. Spangler conducted his examination and generated his report. Dr. Regan opined that the plaintiff had "mild" restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace. He stated plaintiff had no other mental limitations.

The ALJ conducted a hearing. He rendered a decision on September 18, 2008. He found that the plaintiff had severe impairments of degenerative disc disease and obesity, but found that all other alleged impairments were not severe. He noted that the plaintiff was being given Klonopin for anxiety and depression by had "not required treatment by a mental health specialist." He found that Dr. Spangler's limitations were not consistent with his "own

7

examination, examinations by treating physicians, or the claimant's treatment history." He found that the plaintiff had no severe mental impairment. He stated that "[i]t is reasonable to conclude that the claimant's obesity adversely impacts his musculoskeletal impairments." The ALJ found that the plaintiff had the residual functional capacity for the full range of medium work. He found no other physical limitations. He stated the plaintiff could thus return to his past relevant work as a "sweeper/janitor" both as he actually performed it and as it was generally performed in the national economy. Even if he could no longer perform his past relevant work, he would still be "not disabled" under medical-vocational rules 203.21 and 201.13. Accordingly, he was found to be not disabled. [Tr. 10-17].

Plaintiff makes myriad arguments regarding why benefits should be awarded, or the case remanded for further evaluation before a different ALJ. Dealing with the concluding argument, that Judge Overton demonstrated nefarious bias against the plaintiff, the only viable "evidence" for such a conclusion is that Judge Overton denied the plaintiff benefits. While the Court is going to recommend a remand of the case, there has not been an even remotely adequate showing of prejudice to prompt this Court to tell the Social Security Administration to assign another ALJ to this case.

However, the ALJ, in the opinion of the Court, did err in finding that the plaintiff did not have a severe mental impairment based upon the record before him. All that he had to contradict the opinions of Dr. Spangler were the opinions of the non-examining State Agency psychiatrist, which predated Dr. Spangler's examination and report. Dr. Aasheim diagnosed chronic depression and anxiety and prescribed medication. Dr. Regan's report simply cannot

8

provide substantial evidence for a finding of no severe mental impairment in face of opinions of the treating physician and the examining psychologist.

This does not mean that the plaintiff has a disabling mental impairment, or even a severe mental impairment. A consultative examination by mental health professional may show that Dr. Spangler's opinion lacks substance. But the Court feels that such an examination is imperative to a fair and proper adjudication of this case.

With respect to the plaintiff physical infirmities, there is very little objective evidence to support the plaintiff's claim that he is disabled from any of his conditions. However, the only substantial evidence of the plaintiff's RFC is that of Dr. Trent, the treating orthopedic specialist. A fair reading of Dr. Aasheim's treatment notes do not show the improvement noted by the ALJ in the hearing decision above the restrictions found by Dr. Trent, and the opinions of the State Agency physicians have no basis for opining less restrictions than those of Dr. Trent. The Commissioner is strongly urged to obtain an up to date physical medical assessment from a consultative examiner.

For the foregoing reasons, it is respectfully recommended that the case be remanded to the defendant Commissioner to obtain a consultative mental examination, and such other supplementation of the record as either party may wish to make. It is further recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 13] be GRANTED insofar as it seeks a remand, although the remand will be under "Sentence Four" as opposed to "Sentence Six," and may be before any ALJ the Commissioner may choose, including Judge Overton. It is further recommended that the Motion for Summary Judgment of the Commissioner [Doc. 16]

be DENIED.[2]

Respectfully submitted:

       s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).